# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

JJ CORLEW,

    Plaintiff,

    v.

HONESDALE BOROUGH, et al.,

    Defendants.

CIVIL ACTION NO. 3:22-cv-01990

(SAPORITO, C.M.J.)

## MEMORANDUM

This is an employment civil rights action. The plaintiff, JJ Corlew, has filed an 11-count complaint asserting damages claims for disability discrimination, failure to accommodate, hostile work environment, and retaliation for protected activity under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and the Pennsylvania Human Relations Act, 42 P.S. § 951 *et seq.*, and for First Amendment retaliation, conspiracy to violate civil rights, and municipal liability under 42 U.S.C. § 1983. The defendants are her former employer, Honesdale Borough (the "Borough"), Borough manager Judith Poltanis, and four elected Borough councilmembers: James Jennings, Jared, Newbon, William McAllister, and Michael Augello.

## I.   ALLEGATIONS OF THE AMENDED COMPLAINT[1]

Between July 1, 2019, and January 18, 2021, Corlew was employed as the Borough's administrative assistant and treasurer. The defendants were allegedly aware that she suffered from severe respiratory disease, asthma, and a severe allergy to mold.

In August 2020, Corlew developed an acute respiratory condition, which was allegedly caused by a mold infestation in the Borough building. On August 4, August 14, August 24, and November 20, 2020, Corlew provided her employer with documentation from her treating medical providers regarding her alleged disability, impairment, and condition.[2] In particular, on or after August 14, 2020, Corlew presented her employer with a medical note from her treating nurse practitioner, Kathryn DeWitt Phillips, stating that she needed to be excused from work until further notice due to asthma symptoms triggered by the workplace mold infestation.[3] On or after August 24, 2020, Corlew

---

[1] In addition to the amended complaint itself, in composing this summary of the facts alleged, we have relied on the documentary exhibits attached to the plaintiff's amended complaint and incorporated by reference.

[2] Doc. 16-4; Doc. 16-5; Doc. 16-6; Doc. 16-7.

[3] Doc. 16-5.

presented her employer with a medical note from DeWitt Phillips stating that Corlew had recovered from her acute respiratory condition and could return to work, but advising that she should be permitted to work from home due to her chronic respiratory disease and the COVID-19 pandemic.[4]

On August 11, 2020, Corlew submitted a written employment grievance to the Borough's grievance committee, complaining about the mold infestation and Poltanis's handling of both the mold infestation and Corlew's related medical issues. Corlew also complained of discriminatory treatment by Poltanis with respect to working from home.[5] That same day, Corlew submitted a written request to Poltanis requesting that she be permitted to work from home as an accommodation.[6]

In October 2020, an environmental services contractor conducted an indoor air quality assessment and visual inspection of the Borough building. In its November 2, 2020, report, the contractor confirmed the

---

[4] Doc. 16-6.
[5] Doc. 16-10.
[6] Doc. 16-11.

presence of elevated mold spore levels in the Borough building.[7] The defendants were allegedly aware of this mold infestation "for many months" prior to the report, but failed to take remedial measures to eradicate the mold.

On or after November 20, 2020, Corlew presented her employer with a medical note from DeWitt Phillips stating that Corlew had a mold allergy and could suffer a "flare up" if there is mold present in the Borough building. The note further advised that, due to the COVID-19 pandemic, Corlew should be permitted to work from home if possible.[8]

On January 18, 2021, the Borough, by and through a majority vote of its borough council, terminated Corlew's employment with the Borough.[9] Corlew alleges that the Borough failed to engage in a flexible interactive process or to act reasonably or in good faith. She further alleges that the reasons given for her termination were pretext for disability discrimination, a refusal to accommodate her disability, and retaliation for protected activities.

---

[7] Doc. 16-3.

[8] Doc. 16-7.

[9] Doc. 16-13.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic

documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

The defendants have moved for partial dismissal of the amended complaint. The defendants contend that the plaintiff's claims against the individual defendants in their official capacity should be dismissed as redundant or duplicative, as the complaint also names their employer, the Borough, as a defendant as well. The defendants contend that the plaintiff's claims for punitive damages should be dismissed to the extent they seek to recover such relief from the Borough, a municipality generally not amenable to punitive damages, and to the extent they seek to recover such relief from the personal-capacity individual defendants in connection with the plaintiff's PHRA claims. The defendants contend that the plaintiff's § 1983 claims should be dismissed because Corlew's requests for accommodation and her grievance were employment-related speech by a public employee not protected by the First Amendment. They

further contend that the plaintiff has failed to allege sufficient facts to support a plausible § 1983 civil rights conspiracy claim or a plausible § 1983 municipal liability claim.[10]

## A. Official-Capacity Claims

The amended complaint names the individual defendants in both official and personal capacities. In their motion papers, the defendants contend that the plaintiff's official-capacity claims should be dismissed as redundant of her substantively identical claims against the Borough.

The plaintiff has failed to address this argument whatsoever in her opposition brief. The filing of a brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim. *See Dreibelbis v. Scholton*, 274 Fed App'x 183, 185 (3d Cir. 2008) (affirming district court's finding of waiver as to an argument where plaintiff had an opportunity to address it in his opposition brief but failed to do so); *Levy-Tatum v. Navient Solutions, Inc.*, 183 F. Supp. 701, 712 (E.D. Pa. 2016) (collecting cases); *D'Angio v. Borough of Nescopeck*, 34 F. Supp. 2d 256,

---

[10] Besides the official-capacity and punitive damages claims, the defendants have not moved to dismiss the ADA and PHRA claims.

265 (M.D. Pa. 1999) (finding claims waived where plaintiff failed to address defendant's argument in his brief in opposition to a motion to dismiss); *see also LM Gen. Ins. Co. v. LeBrun*, 470 F. Supp. 3d 440, 460 (E.D. Pa. 2020); *Celestial Cmty. Dev. Corp. v. City of Philadelphia*, 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012).

In any event, "[o]fficial capacity actions are redundant where the entity for which the individuals worked is named." *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 646 (M.D. Pa. 2016) (dismissing official-capacity claims against municipal officials as redundant when municipality was also named as a defendant). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

Thus, pursuant to the court's inherent authority to control its docket and avoid duplicative claims, the plaintiff's official-capacity claims against the individual defendants—Poltanis, Jennings, Newbon, McAlister, and Augello—may be dismissed as redundant or duplicative of the plaintiff's substantially identical claims against their employer—

Honesdale Borough. *See Korth v. Hoover*, 190 F. Supp. 3d 394, 402–03 (M.D. Pa. 2016); *see also Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 131–32 (D.N.J. 2017); *Gretzula v. Camden Cnty. Tech. Schs. Bd. of Educ.*, 965 F. Supp. 2d 478, 487–88 (D.N.J. 2013); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 431–32 (E.D. Pa. 1998).[11]

Accordingly, the plaintiff's *official-capacity* claims against the individual defendants—Poltanis, Jennings, Newbon, McAlister, and Augello—will be dismissed as redundant or duplicative of the plaintiff's claims against their employer, the municipal defendant, Honesdale Borough, pursuant to the court's inherent authority to control its docket and avoid duplicative claims.

## B. Punitive Damages Claims

In each of the eleven counts of the amended complaint, the plaintiff

---

[11] We resort to this discretionary authority here because Rule 12(b)(6) is not an appropriate vehicle for dismissal of redundant or duplicative claims. *See generally Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 432 (E.D. Pa. 1998) ("[A]lthough we are not required to do so, we will exercise our discretion and grant the [motion] to dismiss the official capacity claims . . . ."); *Crighton v. Schuylkill Cnty.*, 882 F. Supp. 411, 415 (E.D. Pa. 1995) ("Motions to dismiss pursuant to Rule 12(b)(6) test the validity of the compliant. A claim that is redundant is not necessarily invalid.").

has requested an award of "punitive damages against the individual defendants."[12]

In their brief in support, the defendants contend that the plaintiff's punitive damages claims should be dismissed to the extent they seek recovery against the Borough or against the individual defendants in their official capacities. Supp. Br. 12, Doc. 29. In her opposition brief, Corlew responds that her amended complaint seeks punitive damages from the individual defendants only; she does not seek punitive damages from the Borough itself. Opp'n Br. 20, Doc. 35. In their reply, the defendants argue that the amended complaint has named the individual defendants in their official capacities, and thus "all requests for punitive damages should be dismissed." Reply Br. 11, Doc. 36.

It is well established that punitive damages are not available against municipalities under Title I of the ADA, § 1983, and state tort law. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (§ 1983); *Doe v. Cnty. of Centre*, 242 F.3d 437, 457 (3d Cir. 2001) (citing 42 U.S.C. § 1981a(b)(1)) (Title I of the ADA); *Taylor v. Phoenixville Sch. Dist.*, 113 F. Supp. 2d 770, 777 (E.D. Pa. 2000) (citing 42 U.S.C.

---

[12] In some counts, "defendants" is capitalized. In others, it is not.

§ 1981a(a)(2), (b)(1)) (Title I of the ADA); *Marko ex rel. Marko v. City of Philadelphia*, 576 A.2d 1193, 1194 (Pa. Commw. Ct. 1990) (citing 42 Pa. Cons. Stat. Ann. § 8553(c)) (state tort law); *Bensalem Twp. v. Press*, 501 A.2d 331, 338–39 (Pa. Commw. Ct. 1985) (state tort law). But we agree that the amended complaint has expressly limited the plaintiff's punitive damages claims to the individual defendants—it does not seek such relief from the Borough itself. While the amended complaint does name the individual defendants in both official and personal capacities, and the defendants' argument on this point is well taken, the issue of official-capacity punitive damages claims is mooted by our dismissal of *all* official-capacity claims as redundant or duplicative of the plaintiff's direct claims against the Borough.

What is left then are the plaintiff's claims for punitive damages against the individual defendants in their personal capacities under § 1983 and the PHRA. In their brief in support, the defendants contend that punitive damages are not recoverable from *any* defendant under the PHRA.[13] Supp. Br. 13. The plaintiff has failed to address this argument

---

[13] The defendants do not separately challenge the plaintiff's personal-capacity claims for punitive damages under § 1983.

whatsoever in her opposition brief, thereby waiving the issue. *See Dreibelbis*, 274 Fed App'x at 185; *Levy-Tatum*, 183 F. Supp. at 712; *D'Angio*, 34 F. Supp. 2d at 265. In any event, it is well established that "punitive damages are not available under the PHRA." *Snyder v. Bazargani*, 241 Fed. App'x 20, 23 n.1 (3d Cir. 2007); *see also Gucker v. U.S. Steel Corp.*, 212 F. Supp. 3d 549, 561 (W.D. Pa. 2016); *Johnson v. Fed. Express Corp.*, 996 F. Supp. 2d 302, 321 (M.D. Pa. 2014); *Hoy v. Angelone*, 720 A.2d 745, 751 (Pa. 1998).

Accordingly, the plaintiff's PHRA claims for punitive damages against the individual defendants—Poltanis, Jennings, Newbon, McAlister, and Augello—in their *personal capacities*, set forth in Counts II, IV, VI, and VIII, will be dismissed for failure to state a claim upon which relief can be granted.

### C. Section 1983 First Amendment Retaliation Claim

In Count X, the amended complaint asserts a § 1983 First Amendment retaliation claim against the five individual defendants. Corlew alleges that she was terminated by these defendants in retaliation for reporting the existing mold problem in the Borough building to her employer, for demanding remediation of the mold issue,

and for filing her August 11, 2020, grievance.

To establish a § 1983 retaliation claim, a plaintiff must show: (1) constitutionally protected activity; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights; and (3) a causal link between the constitutionally protected activity and the retaliatory action. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006); *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 48 (M.D. Pa. 2019). Both the defendants' motion and our ruling turn on the first element.

The plaintiff contends that her reporting of the mold problem, her demands for remediation, and her August 2020 grievance constitute constitutionally protected speech. As we have noted, Corlew was a public employee, serving as an administrative assistant and treasurer for the Borough, a municipal employer. As the Third Circuit has explained:

> Speech by government employees is constitutionally protected when the employee is speaking as a citizen, not as an employee, and when the speech involves a matter of public concern. If these two prerequisites are not met, a public employee has no First Amendment cause of action based on his or her employer's reaction to the speech.

*Bradley v. W. Chester Univ.*, 880 F.3d 643, 650–51 (3d Cir. 2018)

(footnotes, brackets, and internal quotation marks omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983); *see also Plouffe*, 777 Fed. App'x at 603 ("Whether an individual spoke as an employee requires examination of the content, form, and context of the relevant speech.") (citing *Rankin v. McPherson*, 483 U.S. 378, 384–85 (1987)). "The inquiry into the protected status of speech is one of law, not fact." *Connick*, 461 U.S. at 148 n.7; *see also Plouffe*, 777 Fed. App'x at 603 ("[T]his is a question of law and not one for the finder-of-fact.") (internal quotation marks omitted).

 "Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick*, 461 U.S. at 146–48). But "speech that relates solely to mundane employment grievances does not implicate a matter of public concern." *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467 (3d Cir. 2015); *see also Palardy v. Twp. of Milburn*, 906 F.3d 76, 83 (3d Cir. 2018) ("Personal grievances, complaints about conditions of

employment, or expressions about other matters of personal interest . . . are matters more immediately concerned with the self-interest of the speaker as employee.") (quoting *Boals v. Gray*, 775 F.2d 686, 693 (6th Cir. 1985)) (ellipsis in original); *Miller*, 544 F.3d at 550–51 (finding letter was not protected by First Amendment where it focused on plaintiff's private grievances as an employee, and any statements of public concern were tangential to the private grievance). Moreover, "[t]he forum in which a petition is lodged will be relevant to the determination whether the petition relates to a matter of public concern." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 399 (3d Cir. 2011). As the Third Circuit has observed, "[a] petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public or to advance a political or social point of view beyond the employment context." *Id.*

A copy of Corlew's August 11, 2020, grievance letter, addressed to the "Honesdale Borough Grievance Committee," is attached as an exhibit to her amended complaint. Its stated purpose was to "address the issue of Judith Poltanis Borough Secretary/Borough Manager and how she's handling my health related issues." Although it briefly noted that a

former employee of the Borough had told Corlew that he or she had also experienced mold-related "health concerns," and that other employees had observed water intrusion into the building's basement when they sought shelter during a tornado warning, the grievance was predominantly concerned with Corlew's personal medical condition, the denial of her request to work remotely from home, and an alleged lack of honesty, professionalism, and fairness by her supervisor, Poltanis.[14]

_____

[14] In its entirety, the grievance stated:

> I am sending out this letter to address the issue of Judith Poltanis Borough Secretary/Borough Manager and how she's handling my health related issues that were brough to her attention on August 4, 2020 and upon being hired at the borough. I received a letter from Judith Poltanis that was in part drafted by the labor attorney, on August 10, 2020 at the close of the business day in response to a letter written by one of my treating physicians that was delivered to Judith on August 4, 2020. In this letter you can see that addition[al] information is being requested but was mentioned that some of the recommendations may be too costly for the Borough. I have much to say on this matter. First, it was brought to my attention that a former employee has stated that they had health concerns that were thought to be mold related and were never resolved. Although the employee is no longer with the Borough of Honesdale, I'm saddened to think their health may have been a contributing factor to that former employee leaving the Borough. As you know, reporting any concerns in the past only went to

*(continued on next page)*

the Borough Secretary/Borough Manager and may have made the employee uncomfortable to pursue further action. The reason why I mention mold is because, upon being hired at the Borough I mentioned to Judith Poltanis that I had a severe allergic reaction to mold that would affect my asthma and she assured me that mold was not an issue. This information may prove to be false and Judith may have knowingly put my life in danger. In addition, a council member mentioned during a meeting that the presence of mold was found at City Hall and that there is an audio version of this meeting posted on the Borough's website. To the best of my knowledge, the mold has not yet been addressed and may be a contributing factor to my recent decreased lung function and increased asthma flares. Not to mention on August 4, 2020 Borough employees, including myself, were evacuated to the basement during a tornado warning. At that time we all witnessed water rushing down the basement walls inside of City Hall and pooled into a large collection of water on the basement floor. Further investigation showed that water was also coming down the inside of walls on the first floor of City Hall too, which could also promote mold and other health related issues.

During my most recent asthma flare, Judith repeatedly told multiple Borough Employees that I sounded much worse than I was and not to worry about me. She also stated that the way I sounded was due to medications not my medical condition. I believe my recent Emergency Room visit on August 8, 2020 along with documentation from my treating physicians proves otherwise. Her comments were unjust, out of line, unprofessional, and not truthful. Her representation as a Borough Manager is not what I or any Borough employee should expect as comments or

*(continued on next page)*

- 17 -

These are not statements of public concern, but rather a mundane employment grievance, merely expressing the plaintiff's personalized complaints about the conditions of her employment, including a supervisor's allegedly unprofessional and unfair handling of the plaintiff's medical condition and related requests for accommodation. *See Kowalewski v. Susquehanna Cnty.*, No. 17-CV-01182, 2018 WL 656011, at *3 (M.D. Pa. Feb. 1, 2018) ("Courts routinely find an absence of public

---

actions from our manager; she is often unprofessional in addressing the employees. I can produce more information about this if requested.

Another complaint at this time is how partiality is shown in health related matters when it involves the Borough Secretary/Borough Manager. Judith Poltanis contacted all the administrative employees on Easter Sunday to explain that her high risk to Covid and health issues mixed with her prescriptions for treatment would keep her out of the office. She said that she had contacted the labor attorney and would be working from home during that time. However, my email was ignored and work duties I could perform[] in the home were given to others in the office. Once again showing how unprofessional and inconsistent Judith Poltanis is with regard[] to human resource matters. It is my strong belief she may need additional training and should not be addressing these issue[s] alone. I plan to further submit a more formal complaint that may be more detailed once my current asthma flare has lessened. Thank you for your time and consideration in this matter.

Doc. 16-10.

interest where public employees level personalized complaints against their employers.") (collecting cases); *Rearick v. Spanier*, No. 11-CV-624, 2011 WL 656011, at *4 (M.D. Pa. Oct. 14, 2011) ("Mere employee grievances are not . . . a public concern . . . ."), *modified*, 2011 WL 5920713 (M.D. Pa. Nov. 28, 2011); *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 391 (E.D. Pa. 2011) ("'Private grievances as an employee' and 'speech related solely to mundane employment grievances' are not examples of speech constituting matters of public concern, and thus, are not protected by the First Amendment."); *see also, e.g.*, *Gaj v. U.S. Postal Serv.*, 800 F.2d 64, 67 (3d Cir. 1986) (speech was not protected because employee who complained about noise level and conveyor belt maintenance was "merely expressing himself as an employee dissatisfied with his own conditions of employment"). Corlew's internal grievance simply "did not seek to communicate to the public or to advance a political or social point of view beyond the employment context. Accordingly, the grievance[] cannot form the predicate for a First Amendment retaliation claim." *Emigh v. Steffee*, 442 Fed. App'x 660, 666 (3d Cir. 2011) (internal quotation marks omitted).

Other than this grievance and vague allegations that Corlew

"urged" the Borough to undertake the environmental assessment that confirmed the presence and significant levels of mold inside the building, and that she made requests for reasonable accommodation,[15] all of which clearly concerned the plaintiff's personalized complaints about the conditions of her employment, the amended complaint does not identify any particular speech by Corlew that might serve as a predicate to a First Amendment retaliation claim.[16]

---

[15] It is clear from the amended complaint and attached exhibits that Corlew or her treating medical providers requested that she be permitted to work remotely from home. If her requests included any other proposed accommodations, they are not articulated in the amended complaint.

[16] In her opposition brief, the plaintiff cites a Third Circuit decision to suggest broadly that "asserting a grievance is a constitutionally protected activity." Opp'n Br. 12 (citing *Watson v. Rozum*, 834 F.3d 417, 422–23 (3d Cir. 2016)). But *Watson* is simply inapposite. *Watson* concerned a First Amendment retaliation claim by a *prisoner*, who alleged that prison officials retaliated against him for filing an inmate grievance against a correctional officer. The filing of an inmate grievance by a prisoner implicates the First Amendment because, under 42 U.S.C. § 1997e(a), the exhaustion of administrative remedies is a prerequisite to filing a § 1983 civil rights action in court. *See Garcia v. Dist. of Columbia*, 56 F. Supp. 2d 1, 6 (D.D.C. 1998). As the case law discussed above makes clear, mundane employment grievances by public employees are not protected by the First Amendment.

The plaintiff also cites several cases in which speech by public employees was found to be constitutionally protected because it involved matters of public concern. Opp'n Br. 12–13. But these cases are also inapposite in this case, which involves internal employment grievances. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968) (teacher's letter to

*(continued on next page)*

Accordingly, the plaintiff's § 1983 First Amendment retaliation claim against the individual defendants—Poltanis, Jennings, Newbon, McAlister, and Augello—as set forth in Count X, will be dismissed for failure to state a claim upon which relief can be granted.

### D. Section 1983 Civil Rights Conspiracy Claim

In Count IX, the amended complaint asserts a § 1983 claim for conspiracy to violate civil rights against the five individual defendants. But the basis for this § 1983 conspiracy claim is the First Amendment retaliation claim asserted in Count X, which will be dismissed for failure to state a claim. "[A]bsent any underlying constitutional violation, there [can] be no § 1983 conspiracy liability." *Plouffe v. Cevallos*, 777 Fed. App'x 594, 601 (3d Cir. 2019); *see also Scheller v. Point Twp.*, No. CV-13-0890, 2013 WL 8374681, at *14 (M.D. Pa. Nov. 4, 2013) ("[A] § 1983 conspiracy claim is not actionable where there is no actual § 1983 violation.");

---

the editor about school funding published in local newspaper); *Doguherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 988–91 (3d Cir. 2014) (school district official leaked information to newspaper reporters regarding procurement abuses); *Flora v. Cnty. of Luzerne*, 776 F.3d 169, 180 (3d Cir. 2015) (county chief public defender filed class-action lawsuit on behalf of indigent criminal defendants regarding county's failure to provide adequate funding to public defender's office); *Rankin v. McPherson*, 483 U.S. 378, 387 & n.11 (1987) (political commentary in private workplace conversation by clerical worker to coworker in county constable's office).

*Shovlin v. Univ. of Med. & Dentistry of N.J.*, 50 F. Supp. 2d 297, 317 (D.N.J. 1998) ("As no underlying violation has been shown, there is no basis for a [§ 1983] conspiracy claim."). Accordingly, the plaintiff's § 1983 civil rights conspiracy claim against the individual defendants—Poltanis, Jennings, Newbon, McAlister, and Augello—as set forth in Count IX, will be dismissed for failure to state a claim upon which relief can be granted.

### E. Section 1983 Municipal Liability Claim

In Count XI, the amended complaint asserts a § 1983 *Monell* municipal liability claim against the Borough. *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But the basis for this § 1983 municipal liability claim is the First Amendment retaliation claim asserted in Count X, which will be dismissed for failure to state a claim. "[A] municipality cannot be found liable on a *Monell* claim where there has been no underlying violation of rights under § 1983." *Johnson v. City of Philadelphia*, 105 F. Supp. 3d 474, 482 (E.D. Pa. 2015); *Gayemen v. Sch. Dist. of City of Allentown*, 712 Fed. App'x 218, 221 n.3 (3d Cir. 2017) ("[The plaintiff's] *Monell* claim fails because there was no underlying constitutional violation."); *see also Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d

Cir. 2013). Accordingly, the plaintiff's § 1983 municipal liability claim against the Borough, set forth in Count XI, will be dismissed for failure to state a claim upon which relief can be granted.

### F. Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). It is not clear, however, that amendment would be futile, nor is there any basis to believe that it would be inequitable. Therefore, the partial dismissal of the complaint will be with leave to amend.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion for partial dismissal of the amended complaint will be granted. Pursuant to the court's inherent authority to control its docket and avoid duplicative claims, the plaintiff's official-capacity claims against the individual defendants will be dismissed as redundant or duplicative of her claims

against their employer, the Borough.[17] The plaintiff's § 1983 First Amendment retaliation and § 1983 civil rights conspiracy claims against the five individual defendants,[18] her § 1983 municipal liability claim against the Borough,[19] and her PHRA-based punitive damages claims against the individual defendants[20] will be dismissed for failure to state a claim upon which relief can be granted.

The plaintiff will be granted leave to file a second amended complaint. If a timely second amended complaint is not filed, the action will proceed on the amended complaint with respect to the remainder of the plaintiff's ADA-based employment discrimination, failure to accommodate, hostile work environment, and retaliation claims against the Borough,[21] and her PHRA-based employment discrimination, failure to accommodate, hostile work environment, and retaliation claims against the Borough and the five individual defendants,[22] and the defendants will be directed to file an answer to the amended complaint

---

[17] Set forth in all Counts except Count XI.
[18] Set forth in Counts IX and X.
[19] Set forth in Count XI.
[20] Set forth in Counts II, IV, VI, and VIII.
[21] Set forth in Counts I, III, V, and VII.
[22] Set forth in Counts II, IV, VI, and VIII.

with respect to these surviving claims.

An appropriate order follows.


Dated: March 11, 2024           *s/Joseph F. Saporito, Jr.*
                                JOSEPH F. SAPORITO, JR.
                                Chief United States Magistrate Judge